UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALICE KING and JAMES C. KING, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * Civil Action No. 19-cv-10065-ADB |
| | * |
| WELLS FARGO BANK, N.A., | * |
| | * |
| Defendant. | * |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiffs Alice and James C. King (together, "the Kings") were victims of a fraud in which a third-party hacker compromised wire instructions during a real estate closing and diverted the payoff funds. See [ECF No. 1-1 at 5–15]. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") was the intended recipient of the payoff funds and the location of the fraudulent account into which the funds were diverted. [Id. at 6–7, 11–12]. The Kings "are simply seeking a discharge of mortgage" and, to that end, have asserted several claims against Wells Fargo including for declaratory relief, injunctive relief, quiet title, unjust enrichment, violation of Massachusetts General Laws ch. 93A ("Chapter 93A"), and violation of Massachusetts General Laws ch. 183, § 55. See [id. at 8–14; ECF No. 15 at 4]. Currently pending before the Court is Wells Fargo's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 10]. Although the Court sympathizes with the Kings, for the following reasons, Wells Fargo's motion to dismiss [ECF No. 10] is GRANTED.

**I.    BACKGROUND**

The following facts are drawn from the complaint, the well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to dismiss. See Ruivo v. Wells Fargo

Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). The Court also draws facts from documents attached to and incorporated by reference into the complaint. A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).

The Kings are the current owners of real estate located at 160 Burkhall Street, Unit 409, Weymouth, MA (the "Property"). [ECF No. 1-1 at 5]. They purchased the Property from the estate of George A. Gilboy, Jr. ("Gilboy Estate") for $216,200. [Id. at 5–6]. Prior to his passing, Mr. Gilboy had granted a mortgage on the Property to Mortgage Electronic Registration Systems, Inc., which it later assigned to Wells Fargo. [Id.]. As part of the closing on the Property, the Gilboy Estate sought to obtain a written payoff statement from Wells Fargo for the underlying promissory note secured by the mortgage. [Id. at 6].

On August 13, 2018, a payoff statement was faxed to the facsimile number provided by the Gilboy Estate's attorney, Pamela Linskey ("Attorney Linskey"). [Id. at 7]. The payoff statement appeared to be on Wells Fargo's letterhead and indicated that $91,667.06 was the amount outstanding on the mortgage. [Id. at 7, 64–65]. The payoff statement provided wiring information and listed the beneficiary account name as "WF Payoff Ifile." [Id. at 67]. Attorney Linskey provided the payoff statement to the Kings' counsel, who, pursuant to the wiring instructions provided, then initiated a wire transfer of $91,762.55 from South Shore Bank to the beneficiary account located at Wells Fargo that was listed on the payoff statement.[1] [Id. at 7, 71]. The wire went through on August 15, 2018, but Wells Fargo did not issue a discharge of the mortgage. [Id. at 7].

On September 26, 2018, the Kings made a formal demand on Wells Fargo pursuant to Chapter 93A seeking a discharge of the mortgage. [Id. at 7, 71–73]. The demand letter

---

[1] $95.49 in additional per diem interest needed to be added to the amount indicated in the payoff statement. See [ECF No. 1-1 at 7].

2

explained the circumstances of the wire transfer. [Id. at 71–72]. It also explained that South Shore Bank had been contacted by Wells Fargo regarding potential fraud and that the Kings' attorney had spoken with a representative from Wells Fargo on September 19, 2018, "who confirmed that the 8/13/2018 Payoff Statement we relied upon had been compromised." [Id. at 72]. By comparing the August 13 payoff statement with a new payoff statement from Wells Fargo, the Kings' attorney identified that "the compromise of the 8/13/2018 Payoff Statement related to the beneficiary account number and name" and that "[t]he beneficiary account in the 8/13/2018 Payoff Statement was not an account in [Wells Fargo's] name." [Id.]. The demand letter challenged Wells Fargo's procedures for wire transfers and alleged that Wells Fargo "simply deposit[ed] its funds into an account at [Wells Fargo] that did not belong to [Wells Fargo] nor was titled in the name of "Wells Fargo Bank, N.A. . . . ." [Id.].

On October 25, 2018, Wells Fargo responded to the Chapter 93A demand letter, denied sending the August 13 payoff statement that contained information about the "WF Payoff Ifile" account, and refused to issue a discharge. [Id. at 8, 87–88]. Wells Fargo informed the Kings that it believed they had been a victim of a business electronic mail compromise scheme that "was likely conceived and executed by three or more persons, none of whom are agents or employees of Wells Fargo." [Id. at 88]. Wells Fargo further detailed its efforts in conducting an investigation of the incident, including placing a hold on the bank account used by the suspected perpetrators that resulted in recovering $11,217.55 of the funds. [Id. at 87–88]. Wells Fargo also confirmed that the beneficiary bank account number that had been provided to Attorney Linskey was erroneous and was not provided to her by Wells Fargo or its authorized agents. [Id.]. Finally, Wells Fargo categorically denied receiving the funds wired by Attorney Linskey

3

and further denied having "any actual or constructive notice of the perpetrator's fraudulent activity prior to the thefts." [Id.].

## II. STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citations omitted). The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." Maddox, 732 F.3d at 80 (quoting Twombly, 550 U.S. at 570).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

The foundation of the Kings' claims is their assertion that "[on] or about August 15, 2018, [Wells Fargo] received the Ninety One Thousand Seven Hundred Sixty Two Thousand and 55/100 ($91,762.55) Dollars from the [Kings'] attorneys' bank, South Shore Bank." See [ECF No. 1-1 at 7]. In Count I, the Kings seek a declaratory judgment that the mortgage on the Property is discharged and allege that Wells Fargo "received the funds required to payoff the underlying Note that secured the Mortgage . . . ." [Id. at 8]. In Count II, the Kings seek to quiet the title to the Property and a decree that the mortgage has been discharged based on "receipt by [Wells Fargo] of the required funds . . . ." [Id. at 9]. Count III alleges that Wells Fargo would be unjustly enriched if it is permitted to claim that the mortgage has not been discharged "since they already received [the funds] to payoff the underlying Note . . . ." [Id.]. Count V claims that Wells Fargo has violated Massachusetts General Laws ch. 183, § 55 by failing to issue a discharge of mortgage after receiving funds to pay off the note secured by the mortgage. [Id. at 13]. Finally, Count VI requests that the Court issue a declaration ordering Wells Fargo to show that a preliminary injunction should not be issued prohibiting it from foreclosing on the mortgage until the merits of this action have been adjudicated because the Kings have demonstrated that Wells Fargo "received the necessary funds to pay off and discharge [the] Mortgage" on the Property. [Id. at 13–14].[2]

Each of these claims fails because the foundational allegation that Wells Fargo received the funds from the Kings' attorney is belied by other allegations in the complaint as well as by documents incorporated by reference into the complaint. First, the complaint recognizes that the

---

[2] Count IV similarly alleges that Wells Fargo was in receipt of the payoff funds, but also contains other allegations that do not depend on Wells Fargo having received the funds, such as permitting a fraudulent account to be opened and failing to implement appropriate business practices. See [ECF No. 1-1 at 10–12].

5

funds were wired to a beneficiary account named "WF Payoff Ifile," with account number 6352262031, pursuant to "a purported payoff statement," and attaches and incorporates by reference the fraudulent payoff statement and the record of the wire transfer into account number 6352262031. See [id. at 10–11, 64–69]. The complaint further alleges that the WF Payoff Ifile account was a "Fraudulent Account" opened at Wells Fargo and that Wells Fargo "allowed the holder of the Fraudulent Account to infiltrate its payoff system so that the payoff statement generated by [Wells Fargo] . . . was altered so as to change the Beneficiary Bank Account and Beneficiary Account Name to that of the Fraudulent Account holder." [Id. at 10]. In addition, the complaint states that upon receiving the wire transfer request, Wells Fargo, as the beneficiary bank, "place[d] the payoff funds into an account that was not in the name of [Wells Fargo]." [Id. at 11].

Second, the demand letter sent by the Kings to Wells Fargo and attached to the complaint reiterates that the funds were wired to an account not owned by Wells Fargo. See [id. at 71–73]. The demand letter indicates that the funds were wired from South Shore Bank pursuant to a payoff statement provided by an attorney for the Gilboy Estate. [Id. at 71]. On September 18, 2018, the Kings' attorney received a call from South Shore Bank relaying a call that the bank had received from Wells Fargo that warned of possible fraud; the next day, Wells Fargo confirmed that the payoff statement had been compromised and, as a result, listed a beneficiary account that "was not an account in [Wells Fargo's] name." [Id. at 72]. The Kings allege that Wells Fargo, upon receiving the wire transfer request, deposited the funds into an account that did not belong to it even though the wire transfer request stated that the wire was for "Wells Fargo Bank, N.A." to pay off a mortgage. [Id. at 71–72].

Where the complaint alleges that Wells Fargo "received" the funds, but the documents attached to and incorporated by reference into the complaint demonstrate that the wire transfer went from South Shore Bank to a beneficiary account at Wells Fargo named "WF Payoff Ifile," with account number 6352262031, and not belonging to Wells Fargo, the Court credits the documents. See Barricello v. Wells Fargo Bank, N.A., No. 13-cv-12795-MLW, 2016 WL 1244993, at *10 (D. Mass. Mar. 22, 2016) ("When a document attached to a complaint contradicts an allegation in the complaint, the document trumps the allegation." (citing Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000))). While the wired funds may have passed through Wells Fargo as the beneficiary bank, and therefore were "received" at the beneficiary bank in a colloquial sense, the funds indisputably were placed into an account owned by a Wells Fargo client and were never used to pay off the mortgage on the Property. Because the complaint does not plausibly allege that Wells Fargo received the funds needed to discharge the mortgage, Counts I, II, III, V, and VI, which are each based on this unsupported allegation, are dismissed.

The remaining claim, Count IV, alleges a violation of Chapter 93A. [ECF No. 1-1 at 10–12]. The Kings allege that Wells Fargo engaged in various unfair and deceptive practices concerning opening accounts and wire transfers. See [id.]. Wells Fargo contends that the Kings' Chapter 93A claim fails for lack of causation.[3] [ECF No. 11 at 12]. The Kings do not

---

[3] Wells Fargo also argues that the UCC precludes the Kings from asserting any "duty-based claims" because the UCC "displaces analogous common-law theories of liability." [ECF No. 11 at 9 (quoting Gossels v. Fleet Nat'l Bank, 902 N.E.2d 370, 376 (Mass. 2009)). To the extent that Wells Fargo is asserting that the UCC displaces a statutory claim under Chapter 93A in addition to common law claims, the Court agrees only to the extent that the Chapter 93A claim challenges Wells Fargo's specific practices for receiving wire transfers, which is expressly covered by UCC Article 4A. See Mass. Gen. Laws ch. 106, § 4A-102, cmt. (stating that the UCC is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article"); Mass. Gen. Laws. ch. 106, § 4A-

7

substantively engage with this argument, but instead assert that the complaint provides sufficient information to sustain a motion to dismiss. [ECF No. 15 at 8].

> To state a claim under the consumer protection statute, G. L. c. 93A, § 9, a plaintiff must allege facts sufficient to establish four elements: first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred "in the conduct of any trade or commerce;" third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury.

Rafferty v. Merck & Co., 92 N.E.3d 1205, 1222 (Mass. 2018). "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). "[C]ausation—both 'factual' and 'proximate'—is a required element of a chapter 93A claim." Small Justice LLC v. Xcentric Ventures LLC, 873 F.3d 313, 325 (1st Cir. 2017).

Here, the complaint identifies the following acts or practices by Wells Fargo: (i) permitting an unknown party to open a bank account; (ii) allowing the holder of a fraudulent account to "infiltrate its payoff system"; (iii) failing to adopt or adhere to banking practices to confirm information on incoming wires; (iv) failing to take steps to protect customers and third-parties from criminal activity it knew was ongoing; and, (v) failing to implement common business practices, including verifying all of the information provided by a transferring bank prior to depositing wired funds. [ECF No. 1-1 at 10–12]. The complaint alleges that each of

---

106 & cmt. (defining "funds transfer" and the responsibilities of parties to a wire transfer); see also Atl. Cement Co. v. S. Shore Bank, 730 F.2d 831, 834 (1st Cir. 1984) (questioning whether "Chapter 93A may ever apply to conduct that is strictly in accord with the U.C.C." (citing Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979))); Union St. Corridor-Cmty. Dev. Corp. v. Santander Bank, N.A., 191 F. Supp. 3d 147, 153 (D. Mass. 2016) ("Although the UCC displaces common law claims, it does not necessarily displace those based on statutes, such as Union Street's Chapter 93A claim.").

these actions were done "willfully and knowingly" for the purpose of maximizing profits and industry strength. [Id. at 12]. Even assuming *arguendo* that any of these actions constitutes an unfair or deceptive business practice, none were the factual and proximate cause of the Kings' loss.

The language of Chapter 93A "indicates that there must be a causal connection between the [defendant's] deception and the [plaintiff's] loss." Kohl v. Silver Lake Motors, Inc., 343 N.E.2d 375, 379 (Mass. 1976). This means that the defendant's unfair or deceptive act or practice must be the "but-for" cause of the plaintiff's loss. See McCann v. Davis, Malm & D'Agostine, 669 N.E.2d 1077, 1079 (Mass. 1996). In addition, in order to recover, a plaintiff must also demonstrate that the losses it sustained were the foreseeable consequence of the defendant's deception. See Kohl, 343 N.E.2d at 379. Although several of the actions cited by the Kings may have created an environment at Wells Fargo in which fraudulent conduct was more likely to occur, the actual loss sustained by the Kings was caused by the criminal act of a third-party who absconded with the funds, not by Wells Fargo. Although the Court is troubled by the conduct alleged, the complaint does not state a cognizable claim under Chapter 93A because it fails to allege the required causation. Therefore, Count IV will also be dismissed.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss [ECF No. 10] is GRANTED.

**SO ORDERED.**

August 7, 2019　　　　　　　　　　　　　　　　　　　　/s/ Allison D. Burroughs
　　　　　　　　　　　　　　　　　　　　　　　　　　　ALLISON D. BURROUGHS
　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. DISTRICT JUDGE